Jahan C. Sagafi (Cal. Bar No. 224887)
jsagafi@outtengolden.com
Laura Iris Mattes (Cal. Bar. No. 310594)
imattes@outtengolden.com
Adam Koshkin (Cal. Bar No. 320152)
akoshkin@outtengolden.com
OUTTEN & GOLDEN LLP
One California St., 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810

Rachel Bien (Cal. Bar No. 315886)
rmb@outtengolden.com
OUTTEN & GOLDEN LLP
601 S Figueroa St., Suite 4050
Los Angeles, CA 90017
Telephone: (323) 673-9900
Facsimile: (646) 509-2058

Katharine Chao (Cal. Bar No. 247571)
kathy@osclegal.com
Christian Schreiber (Cal. Bar No. 245597)
christian@osclegal.com
OLIVIER SCHREIBER & CHAO LLP
201 Filbert St., Suite 201
San Francisco, CA 94133
Telephone: (415) 484-0980
Facsimile: (415) 658-7758

Michael J. Scimone*
mscimone@outtengolden.com
OUTTEN & GOLDEN LLP
685 Third Ave., 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
*pro hac vice application forthcoming

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| D. NORTON<br><br>Plaintiff<br><br>v.<br><br>LYFT, INC.,<br><br>Defendant. | Case No. 19-cv-02025-VC<br><br>**FIRST AMENDED COMPLAINT FOR FEDERAL AND STATE EMPLOYMENT LAW VIOLATIONS;**<br><br>**CLAIMS FOR DAMAGES AND INJUNCTIVE RELIEF;**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff David Norton, by and through his undersigned attorneys, alleges as follows:

## SUMMARY OF CLAIMS

1. Plaintiff is an individual who worked as a driver for Defendant Lyft, Inc. ("Lyft"). He brings this action to recover lost wages, reimbursement of expenses, and other relief resulting from Lyft's willful decision to misclassify him as an independent contractor.

2. Plaintiff alleges that Lyft has violated and continues to violate the Fair Labor Standards Act, California Labor Code, and Wage Order 9 protections applicable to him as a Lyft driver because he should be classified as an employee rather than as an independent contractor. These violations include the failure to: (1) reimburse Plaintiff for his expenses, (2) pay overtime, (3) pay minimum wage, (4) provide itemized wage statements, and (5) keep accurate payroll records.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this complaint alleges claims under the laws of the United States, specifically the Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq.* ("FLSA").  This Court has jurisdiction over Plaintiff's claims under California law pursuant to 28 U.S.C. § 1367(a) because they arise from the same case or controversy as Plaintiff's federal claims, and both sets of claims share a common nucleus of operative fact.

4. The United States District Court for the Northern District of California has personal jurisdiction over Defendant because Lyft's principal place of business is in this District and many of the acts complained of and giving rise to the claims alleged took place in California and in this District.

5. Venue is proper in either the San Francisco or Oakland Divisions of this District pursuant to 28 U.S.C. §§ 1391(b), (c)(2) and Civil L.R. 3-2(d) because Defendant resides in San Francisco.

## RELATED CASES

6.  Plaintiff is aware of three related cases in federal court against Lyft: (1) *Whitson v. Lyft, Inc.*, No. 18-cv-06539-VC, (2) *Zamora v. Lyft, Inc.*, No. 16-cv-02558-VC, and (3) *Cotter v. Lyft, Inc.*, No. 13-cv-04065-VC. Those cases were also filed by Lyft drivers seeking unpaid wages due to Lyft's failure to properly classify them as employees. Whitson's and Cotter's claims under the Fair Labor Standards Act, California Labor Code, and Wage Order 9 are substantially similar to Plaintiff's here. Lyft is the defendant in these cases, and the question of whether Lyft misclassifies its drivers as independent contractors is central to each.

## THE PARTIES

7.  Plaintiff David Norton is a resident of Laguna Hills, California. Plaintiff has worked as a Lyft Driver from approximately January 2016 to the present in the Los Angeles area. Plaintiff drove for Lyft Monday through Friday from around 4:30 am to around 2:30 pm each day, approximately 50 hours per week. To the best of his recollection, Plaintiff drove more than forty hours per week without overtime compensation during the weeks beginning May 7, 14, 21, and 28 of 2018. He estimates that he drives approximately 500 miles a week for Lyft's benefit. Details regarding Plaintiff's precise hours, pay, and revenue generated for Lyft are available by reference to Lyft's records.

8.  Plaintiff has also been required to spend a significant amount of his own money in order to drive for Lyft, including (i) approximately $400 per month on gasoline, (ii) approximately $80 per month on routine car maintenance, such as oil changes and car washes, (iii) approximately $1500 per year on average for major car repairs, (iv) approximately $528 per month to finance the cost of his vehicle, and (v) approximately $160 per month for car insurance. Plaintiff could not drive for Lyft without incurring these costs.

9.  Plaintiff timely opted out of Lyft's arbitration agreement, sending a letter in compliance with the procedures laid out in Lyft's Terms of Service ("TOS"). Plaintiff has attempted at least half a dozen times from February to May to confirm with Lyft that he properly opted out of the arbitration requirement and is eligible to pursue claims in court as opposed to

being subject to forced arbitration but has received no response. Specifically, Plaintiff's counsel wrote Lyft's counsel on February 12, February 20, and February 25, 2019 requesting confirmation that Plaintiff opted out of the arbitration requirement. Lyft's counsel responded by stating that they could not confirm or deny whether Plaintiff opted out because Lyft's counsel did not want to "engage in informal discovery." Plaintiff also contacted Lyft directly to confirm his opt-out status on March 1 and March 11, 2019 but received no response. Lyft's first response to these inquiries was its filing of a motion to compel arbitration, filed with the Court on June 17, 2019. Even in that motion, Lyft failed to provide the evidence and detail legally required, causing Norton to incur legal fees to elicit the information necessary to confirm whether he is properly subject to Lyft's arbitration clause.

10. Defendant Lyft, Inc. is a Delaware corporation with its corporate headquarters and primary place of business in San Francisco, California, and operations in at least 33 other states in the United States. The practices described in this Complaint were designed at, emanated from, and carried out by agents in Lyft's San Francisco, California headquarters.

## FACTUAL BACKGROUND

**A.     Plaintiff Satisfies the Legal Test for Employee Status.**

11. Lyft is an App-based transportation provider that has been based in San Francisco, California, since 2012.

12. **Lyft's business.** Lyft provides riders with transportation by assigning Lyft drivers to riders using a mobile phone application (the "Lyft App").

13. The driver then transports the rider, and the rider pays Lyft for the service with a credit card via the Lyft App.

14. Lyft sets the fare to be paid by the rider and communicates it to the rider via the App.

15. On information and belief, Lyft pays the driver approximately 75% of the ride fare plus 100% of any added tip, while Lyft keeps approximately 25% of the fare for itself.

16. The work that Lyft drivers perform is in the usual course of Lyft's business – indeed, providing driving services *is* Lyft's business.

17. Lyft says that it "is one of the largest and fastest growing multimodal transportation networks in the United States." *See* Lyft, Inc., Securities and Exchange Commission Form S-1 Registration Statement,[1] at p. 1 (March 1, 2019) ("S-1 Statement").

18. Lyft drivers, including Plaintiff, provide the service that Lyft sells to the public.

19. Lyft says that it participates in the "transportation . . . market," and describes its business as "singularly focused on revolutionizing transportation." S-1 Statement at p. 3-4.

20. Lyft earns money by providing its customers with a ride from point A to point B – a service that is wholly dependent on Lyft drivers, like Plaintiff.

21. Lyft's "business depends largely on [its] ability to cost-effectively attract and retain qualified drivers[.]" S-1 Statement at p. 10.

22. Lyft is not merely a platform or uninterested bystander between drivers and riders. As this Court has found, "Lyft concerns itself with far more than simply connecting random users of its platform. It markets itself to customers as an on-demand ride service, and it actively seeks out those customers. It gives drivers detailed instructions about how to conduct themselves. Notably, Lyft's own drivers' guide and FAQs state that drivers are 'driving for Lyft.'" *Cotter v. Lyft, Inc.*, 60 F. Supp. 3d 1067, 1078 (N.D. Cal. 2015).

23. As part of Lyft's requirements, Plaintiff received training in how to interact with riders, as well as Lyft's expectations and practices.

24. Lyft also screens every driver, including Plaintiff, "before they are permitted to drive on [its] platform, starting with professional third-party background and driving record checks." *See* S-1 Statement at p. 148.

25. Lyft can terminate Plaintiff's right to provide driving services for violating one or more of the rules that Lyft imposes by contract.

---

[1] *Available at*: https://www.sec.gov/Archives/edgar/data/1759509/000119312519059849/d633517ds1.htm (last visited Apr. 15, 2019).

26.     **Plaintiff lacks business autonomy.**  Plaintiff is not engaged in an independently established business.  He cannot provide transportation services without the Lyft App, nor can he use contacts made through the Lyft app to solicit private transportation clients.  Plaintiff is dependent on Lyft to identify riders for him, he may not hire employees to assist him in providing services for Lyft, and he does not need to possess any particular or special skills other than those required to obtain a driver's license.

27.     By working for Lyft, Plaintiff has not independently made the decision to go into business for himself.  Lyft has unilaterally determined that Plaintiff is an independent contractor while precluding him from taking the usual steps toward promoting and establishing an independent business, such as forming business relationships with Lyft customers or otherwise promoting their services to the public.

28.     Lyft also prohibits Plaintiff from setting or in any way affecting the rates of pay for their own services.  Lyft prohibits Plaintiff from communicating with riders about future ride services and from exceeding Lyft's specified limit on the distance allowed for each ride.

29.     Lyft required Plaintiff use his own car to provide rides for Lyft.  Lyft requires that the car is not more than 12 years old, and it must pass automotive inspections as dictated by Lyft.  Lyft requires drivers, including Plaintiff, to "only provide Services using the vehicle that has been reported to, and approved by Lyft, and for which a photograph has been provided to Lyft."  TOS ¶ 10(d).

30.     Lyft required Plaintiff to carry his own insurance, but Lyft also provides Plaintiff with liability and uninsured/underinsured coverage while he is logged into the Lyft App and driving riders.

31.     Lyft is solely responsible for recording Plaintiff's rides, including the time and distance for each ride, the ride fare and added Lyft fees, any tips, and for compiling Plaintiff's rates of pay for each ride.

32.     **Lyft controls the terms of employment.**  Lyft maintains uniform policies and terms of service with which all Lyft drivers, including Plaintiff, must comply.  Once Plaintiff

1  passed Lyft's initial requirements, he was able to work for Lyft for an indefinite period of time.
2  However, Lyft may shut down Plaintiff's access to the Lyft App for myriad reasons, thus
3  preventing him from obtaining and responding to ride requests.

4       33.    Plaintiff performs work for Lyft by logging in to the Lyft App, making himself
5  available for assignments and visible to Lyft users, which benefits Lyft. While logged in,
6  Plaintiff typically receives ride assignments quickly, sometimes receiving a new ride assignment
7  before completing the existing ride. Plaintiff rarely waits more than 15 minutes between ending
8  one ride and receiving a new ride assignment. Plaintiff receives one assignment every 3-5
9  minutes on an average day. Once Plaintiff receives an assignment, Lyft allows him 15 seconds to
10 accept the assignment to drive that passenger to his or her destination.

11      34.    On information and belief, until the beginning of 2018, Lyft required that drivers
12 accept at least 90% of ride assignments to avoid being terminated. Now, Lyft "use[s] acceptance
13 rates to determine driver eligibility for certain features and help keep passenger wait times short."
14 Lyft Help Center, "Acceptance Rate", available at https://help.lyft.com/hc/en-
15 us/articles/115013077708-Acceptance-rate (last accessed July 1, 2019). Lyft calculates drivers'
16 acceptance rates by adding the number of rides a driver completes to the number of rides
17 cancelled by the rider, and dividing that number by the total number of ride assignments shown to
18 the driver. Lyft explains that a driver's acceptance rate may decrease due to missed assignments,
19 such as when a driver lets the timer count down to zero, and by driver cancellations. Lyft drivers
20 are under pressure to keep their acceptance rates high because Lyft bases eligibility for certain
21 bonuses, awards, and other benefits in part on a driver's overall acceptance rate, such as the
22 weekly "power drive bonus" – a weekly cash bonus given to drivers for completing a certain
23 number of rides. Ridester, "An Introduction to the Lyft Power Driver Bonus", available at
24 https://www.ridester.com/lyft-power-driver-bonus/ (last accessed July 1, 2019).

25      35.    Lyft's manner of assigning rides – including the frequency of ride assignment
26 messages, the very short window within which a driver can accept rides, and the threat of

termination for failure to accept the vast majority of rides – prevents Plaintiff from engaging in personal activities while logged into the Lyft app.

36.  Plaintiff takes care to log out of the app at all times when he is not engaged in providing a ride for Lyft or making himself available for the next ride.  When performing work for Lyft that goes beyond those two activities, Plaintiff typically logs out of the App.  For example, Plaintiff typically logs out when he pumps gas, performances vehicle maintenance and repairs, or uses the restroom.  He schedules his work and personal activities to minimize the risk of missing ride assignments because of Lyft's systematic pressure on drivers logged into the App to accept virtually all ride assignments while logged into the App.

37.  Lyft recognizes that drivers' time while logged into the App is not their own. Specifically, Lyft advises drivers to log out and take a break if they do not plan to accept ride assignments: "If you can't or don't want to accept ride requests, we recommend taking a break." *Id.*

**B.    Lyft's Misclassification of Plaintiff Violates His Rights Under the FLSA and California Law.**

38.  <u>Overtime and minimum wage.</u>  Lyft does not pay Plaintiff overtime for hours worked over eight in a day or over 40 in a week.  Furthermore, although Lyft suffers or permits Plaintiff to log on to the Lyft App and make himself available to pick up rides, Lyft fails to pay him while he is logged on but not providing a ride.  In this way, Lyft fails to pay the minimum wage for all hours actually worked and instead limits his pay to a piece rate for each ride.  Even limiting the calculation of minimum wage to the hours Plaintiff is engaged in providing a ride, Lyft fails to pay him a minimum wage for all hours worked.

39.  <u>Expense reimbursement.</u>  Plaintiff's necessary expenses incurred as a direct consequence of the discharge of his duties for Lyft include mileage costs; car insurance; cell phone service to perform driving services, receive driving requests, and maintain required email and/or text message contact with Lyft; car cleaning and repair to comply with Lyft requirements;

and water, snacks, and/or other supplies for riders, among other expenses. Lyft does not reimburse Plaintiff for his work-related expenses.

40. <u>Wage statements and time records.</u> Lyft's wage statements do not clearly itemize earnings in such a way that Plaintiff can readily identify whether he received all pay for which he is eligible under the law, such as hours worked, overtime, and minimum wages. Payroll records similarly fail to track all pay accurately.

41. <u>Willfulness.</u> Lyft has continued to classify Plaintiff as an independent contractor notwithstanding that its classification policy has been the subject of several lawsuits, including this Court's determination that a jury could reasonably find that Lyft drivers are employees under California law under the more stringent pre-*Dynamex* standard. It has also not changed its policy despite the California Supreme Court's decision in *Dynamex Operations W., Inc. v. Superior Court*, 4 Cal.5th 903 (2018). Lyft's refusal to reclassify Plaintiff as an employee despite the clear legal standard showing that he is an employee is knowing and voluntary and constitutes willful misclassification.

**FIRST CLAIM FOR RELIEF**
**(Minimum Wage Claim, 29 U.S.C. § 206)**

42. Plaintiff realleges and incorporates by reference all other paragraphs as if they were set forth again herein.

43. At all relevant times, Lyft has been an employer and Plaintiff has been an employee under California and Federal law entitled to the protections of the FLSA, the California Labor Code, and Wage Order 9.

44. The foregoing conduct, as alleged, constitutes a violation of 29 U.S.C. § 206, which protects Plaintiff's right to earn a minimum wage and provides for damages and punishment for violations of that right.

45. In particular, although and the federal minimum wage was $7.25, Plaintiff regularly earned less than the minimum due to the significant deductions from his pay that Lyft required him to make for gasoline, car insurance, car financing, cleaning and maintenance, and cell phone usage, as well as the other expenses noted in paragraph 8 above. These expenses

resulted in hourly rates of well less than $7.25 based on the hours that Plaintiff worked as set forth in paragraph 7 above.

46. Although Plaintiff periodically did not earn at least the minimum wage, Lyft had a policy and practice of failing and refusing to pay them minimum wage for all hours worked and thus violated and continue to violate the above-referenced minimum wage protections.

47. Plaintiff seeks the amount of the respective unpaid wages owed him, liquidated damages, attorneys' fees and costs pursuant to 29 U.S.C. §§ 201 *et seq.*and such other legal and equitable relief as the Court deems just and proper.

### SECOND CLAIM FOR RELIEF
### (Overtime Claim, 29 U.S.C. § 207)

48. Plaintiff realleges and incorporates by reference all other paragraphs as if they were set forth again herein.

49. At all relevant times, Lyft has been an employer and Plaintiff has been an employee under Federal law entitled to the protections of the FLSA.

50. The foregoing conduct, as alleged, constitutes a violation of 29 U.S.C. § 207, which requires overtime pay for time worked over 40 hours in a week.

51. Although Plaintiff periodically worked more than 40 hours in a week, including during the weeks beginning May 7, 14, 21, and 28 of 2018, Lyft had a policy and practice of failing and refusing to pay him overtime and thus violated and continues to violate the above-referenced overtime provisions of the FLSA.

52. Plaintiff seeks the amount of the respective unpaid wages owed him, liquidated damages, attorneys' fees and costs pursuant to 29 U.S.C. §§ 201 *et seq.*and such other legal and equitable relief as the Court deems just and proper.

### THIRD CLAIM FOR RELIEF
### (Minimum Wage Claim, Cal. Labor Code §§ 1182.12, 1194, 1194.2, 1197, 1197.1, 1199, and Wage Order 9)

53. Plaintiff realleges and incorporates by reference all other paragraphs as if they were set forth again herein.

54. At all relevant times, Lyft has been an employer and Plaintiff has been an employee under California law entitled to the protections of the California Labor Code and Wage Order 9.

55. The foregoing conduct, as alleged, also constitutes a violation of the California Labor Code §§ 1182.12, 1194, 1194.2, 1197, 1197.1, 1199, and Wage Order 9, which similarly protect Plaintiff's right to earn a minimum wage and provide for damages and punishment for violations of that right.

56. Although the applicable minimum wage in California was $9 to $11 between 2015 and 2019, Plaintiff regularly earned less than the minimum due to the significant deductions from his pay that Lyft required him to make for gasoline, car insurance, car financing, cleaning and maintenance, and cell phone usage, as well as the other expenses noted in paragraph 8 above. These expenses resulted in hourly rates of well less than $9-$11 based on the hours that Plaintiff worked as set forth in paragraph 7 above.

57. Although Plaintiff periodically did not earn at least the minimum wage, Lyft had a policy and practice of failing and refusing to pay them minimum wage for all hours worked and thus violated and continue to violate the above-referenced minimum wage protections.

58. Plaintiff seeks the amount of the respective unpaid wages owed him, liquidated damages, attorneys' fees and costs pursuant to Cal. Labor Code § 1194 and Wage Order 9, and such other legal and equitable relief as the Court deems just and proper.

**FOURTH CLAIM FOR RELIEF**
**(Overtime Claim, Cal. Labor Code §§ 510, 1194, 1198,**
**and Wage Order 9)**

59. Plaintiff realleges and incorporates by reference all other paragraphs as if they were set forth again herein.

60. At all relevant times, Lyft has been an employer and Plaintiff has been an employee under California law entitled to the protections of the California Labor Code and Wage Order 9.

61. The foregoing conduct, as alleged, constitutes a violation of California Labor Code §§ 510, 1194, 1198, and Wage Order 9, which require overtime pay for time worked over eight hours in a day or over 40 hours in a week.

62. Although Plaintiff periodically worked more than eight hours in a day or 40 hours in a week, including working more than 40 hours during the weeks beginning May 7, 14, 21, and 28 of 2018, Lyft had a policy and practice of failing and refusing to pay him overtime and thus violated and continues to violate the above-referenced overtime provisions of the California Labor Code and Wage Order 9.

63. Plaintiff seeks the amount of the respective unpaid wages owed him, liquidated damages, attorneys' fees and costs pursuant to Cal. Labor Code § 1194 and Wage Order 9, and such other legal and equitable relief as the Court deems just and proper.

**FIFTH CLAIM FOR RELIEF**
**(Expense Reimbursement Claim, Cal. Labor Code § 2802**
**and Wage Order 9)**

64. Plaintiff realleges and incorporates by reference all other paragraphs as if they were set forth again herein.

65. At all relevant times, Lyft has been an employer and Plaintiff has been an employee under California and Federal law entitled to the protections of the FLSA, the California Labor Code, and Wage Order 9.

66. The foregoing conduct, as alleged, constitutes a violation of California Labor Code § 2802 and Wage Order 9, which provides for the reimbursement of employee expenses incurred while carrying out their employment or to comply with employer requirements.

67. Plaintiff has incurred and continues to incur expenses necessary for driving for Lyft that include mileage costs; car insurance; cell phone service to perform his driving duties, receive driving requests, and maintain required email and/or text message contact with Lyft; car cleaning and repair to comply with Lyft requirements; and water, snacks, and/or other supplies for riders, among other expenses.

68. Lyft failed to reimburse Plaintiff for all of his work-related expenses and thus violated and continues to violate Labor Code § 2802 and Wage Order 9.

69. Plaintiff seeks the amount of unpaid expenses owed him, interest, attorneys' fees and costs pursuant to Labor Code § 2802(b) and (c) and Wage Order 9, and such other legal and equitable relief as the Court deems just and proper.

## SIXTH CLAIM FOR RELIEF
### (Wage Statement Claim, Cal. Labor Code § 226, and Wage Order 9)

70. Plaintiff realleges and incorporates by reference all other paragraphs as if they were set forth again herein.

71. At all relevant times, Lyft has been an employer and Plaintiff has been an employee under California and Federal law entitled to the protections of the FLSA, the California Labor Code, and Wage Order 9.

72. The foregoing conduct, as alleged, constitutes a violation of California Labor Code § 226 and Wage Order 9, which provides requirements for properly itemized wage statements.

73. The wage statements Lyft provided to Plaintiff do not clearly itemize hours worked, an hourly wage, overtime, or earnings in a way that Plaintiff can readily identify whether he received all applicable pay for which he was eligible. Lyft thus violated and continues to violate California Labor Code § 226 and Wage Order 9.

74. Plaintiff seeks to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurred and one hundred dollars ($100) for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), as well as costs and attorneys' fees.

## SEVENTH CLAIM FOR RELIEF
### (Unfair Business Practices, Cal. Bus. & Prof. Code § 17200)

75. Plaintiff realleges and incorporates by reference all other paragraphs as if they were set forth again herein.

76. At all relevant times, Lyft has been an employer and Plaintiff has been an employee under California and Federal law entitled to the protections of the FLSA, the California Labor Code, and Wage Order 9.

77. California Labor Code § 226.8 makes it unlawful for employers to willfully misclassify workers as independent contractors, and to charge an individual who has been willfully misclassified as an independent contractor a fee, or make any deductions from compensation, for any purpose including for goods, materials, space rental, services, government licenses, repairs, equipment maintenance, or fines arising from the individual's employment where any of the acts described would have violated the law if the individual had not been misclassified.

78. California Labor Code § 2802 and Wage Order 9 provide for the reimbursement of Plaintiff's expenses incurred while carrying out their employment or to comply with Lyft requirements.

79. California Labor Code §§ 1182.12, 1194, 1194.2, 1197, 1197.1, 1199, and Wage Order 9 protect Plaintiff's right to earn the minimum wage and provide for damages and punishment for violations of that right.

80. California Labor Code §§ 510, 1194, 1198, and Wage Order 9 provide for compensation with overtime pay for time worked over eight hours in a day or 40 hours in a week.

81. California Labor Code §§ 226, 353, 1174 and Wage Order 9 provide requirements for properly itemized wage statements and payroll recordkeeping.

82. California Labor Code § 2810.5 requires employers to provide written notice at the time of hire containing the rate or rates of pay, including overtime rate, the basis for pay (whether by the hour, piece, etc.), as well as other information.

83. California Labor Code § 432 requires employers to provide employees and applicants, "upon request," with "a copy of . . . any instrument relating to the obtaining or holding of employment that" that he or she has "sign[ed]." In addition, California Labor Code § 1198.5 provides "[e]very current and former employee[] or his or her representative . . . the right to

inspect and receive a copy of the personnel records that the employer maintains relating to the employee's performance or to any grievance concerning the employee." That statute provides procedural protections for employees relating to how and when employees must be allowed to inspect or receive copies of such records, and it provides for injunctive relief and a penalty of $750 payable to the employee.

84. On information and belief, Lyft has a pattern, practice, and/or policy of failing to provide employee-specific documents and information, including details regarding whether they are subject to Lyft's arbitration clause, within a reasonable time and in a manner that complies with the law.

85. Lyft's conduct, as alleged, violates the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL"), which prohibits, *inter alia*, unfair competition in the form of any unlawful, unfair, deceptive, or fraudulent business practices.

86. By failing to pay Plaintiff work-related expenses, overtime, and minimum wage, and violating requirements for wage statements, notice, and payroll records, Lyft committed unlawful and unfair acts as defined by the UCL.

87. Lyft's practices, as alleged, constitute unlawful acts because such acts violate the California Labor Code sections detailed above, as well as Wage Order 9.

88. Lyft's practices, as alleged, also constitute unfair acts because such acts are contrary to public policy.

89. As a result of these unlawful and/or unfair business practices, Lyft reaped unfair benefits and illegal profits at Plaintiff's expense. Lyft must disgorge these ill-gotten gains and restore to Plaintiff all expense reimbursement, overtime, minimum wages, and other wages owed. Lyft's actions deprived Plaintiff of his expenses and full pay; consequently, Plaintiff has lost money and property, and he is entitled to restitution in the amount of his expenses and pay that Lyft withheld. Pursuant to California Code of Civil Procedure § 1021.5, Plaintiff is entitled to payment of his attorneys' fees, costs, and expenses incurred in bringing this action.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

A. A declaratory judgment that the practices complained of herein are unlawful under federal and state law;

B. An injunction against Lyft and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with it, as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

C. Appropriate statutory penalties;

D. An award of damages and restitution to be paid by Lyft according to proof;

E. Pre-judgment and post-judgment interest, as provided by law;

F. Such other injunctive and equitable relief as the Court may deem just and proper; and

G. Attorneys' fees and costs of suit, including expert fees and costs.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which he has a right to jury trial.

| | | |
|---|---|---|
| 1 | Dated: July 8, 2019 | Respectfully submitted, |
| 2 | | |
| 3 | | By: /s/Jahan C. Sagafi
             Jahan C. Sagafi |
| 4 | | Jahan C. Sagafi (Cal. Bar No. 224887) |
| 5 | | jsagafi@outtengolden.com
Laura Iris Mattes (Cal. Bar No. 310594) |
| 6 | | imattes@outtengolden.com
Adam Koshkin (Cal. Bar No. 320152) |
| 7 | | akoshkin@outtengolden.com
OUTTEN & GOLDEN LLP |
| 8 | | One California St, 12th Floor
San Francisco, CA 94111 |
| 9 | | Telephone: (415) 638-8800 |
| 10 | | Facsimile: (415) 638-8810 |
| 11 | | Rachel Bien (Cal. Bar No. 315886) |
| 12 | | rmb@outtengolden.com
601 S Figueroa St., Suite 4050 |
| 13 | | Los Angeles, CA 90017
Telephone: (323) 673-9900 |
| 14 | | Facsimile: (646) 509-2058 |
| 15 | | Michael J. Scimone* |
| 16 | | mscimone@outtengolden.com
685 Third Avenue, 25th Floor |
| 17 | | New York, NY 10017
Telephone: (212) 245-1000 |
| 18 | | Facsimile: (646) 509-2060 |
| 19 | | *pro hac vice application forthcoming |
| 20 | | Katharine Chao (Cal. Bar No. 247571)
kathy@osclegal.com |
| 21 | | Christian Schreiber (Cal. Bar No. 245597) |
| 22 | | christian@osclegal.com
OLIVIER SCHREIBER & CHAO LLP |
| 23 | | 201 Filbert Street, Suite 201
San Francisco, CA 94133 |
| 24 | | Telephone: (415) 484-0980
Facsimile: (415) 658-7758 |
| 25 | | *Counsel for Plaintiff* |
| 26 | | |
| 27 | | |
| 28 | | |